UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **ADEMAR GALVAN, Individually and For Others Similarly Situated,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**CONOCOPHILLIPS COMPANY,**<br>      **Defendant.** | Case No. 2:22-cv-00214<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Ademar Galvan (Plaintiff) brings this lawsuit individually and on behalf of all current and former Wellsite Managers (Putative Class Members) who worked for ConocoPhillips Company (CPC) and were paid a day rate with no overtime compensation. Plaintiff brings this action to recover unpaid overtime wages and other damages from CPC under the Fair Labor Standards Act (FLSA).

2. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover overtime wages.

3. Plaintiff and the Putative Class Members worked for CPC as Wellsite Managers.

4. Plaintiff and the Putative Class Members regularly worked for CPC in excess of forty (40) hours each week.

5. But CPC did not pay them overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. Instead of paying overtime as required by the FLSA, CPC improperly classified Plaintiff and the Putative Class Members as independent contractors ineligible for overtime, and paid

them a day rate with no overtime compensation. This practice violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201 *et. seq.*

7.  CPC's decision not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

8.  Rather, CPC knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

9.  Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

11. This Court has personal jurisdiction over CPC because CPC is a resident entity of this District and is subject to the court's personal jurisdiction with respect to the civil action in question.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

13. Plaintiff worked for CPC from approximately early 2019 until approximately late 2021 as a Wellsite Manager in Texas.

14. Throughout his employment, CPC paid Plaintiff a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

15. The relationship between Plaintiff and CPC rises to the level of an employee-employer relationship.

16. Plaintiff's consent to be a party plaintiff is attached as **Exhibit A**.

17. Plaintiff brings this action on behalf of himself and all similarly situated Wellsite Managers who were paid by CPC's day rate pay plan. CPC classified these Wellsite Managers as independent contractors, paid them a flat amount for each day worked, and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

18. The FLSA Collective of similarly situated workers consists of:

**All individuals in the Wellsite Manager position employed by or working on behalf of CPC and paid according to its day rate pay plan in the past three (3) years (Putative Class Members).**

19. The identities of the Putative Class Members can be readily ascertained from CPC's records.

20. CPC is a company doing business throughout the United States.

21. CPC is a Delaware corporation, headquartered in Texas, and doing business in Texas, and may be served through its registered agent for service of process: **United States Corporation Company,** 211 E. 7th Street, Suite 620, Austin, TX 78701.

### ADDITIONAL FACTS

22. CPC is a company engaged in the exploration and production of oil and natural gas. CPC regularly produces, transports, and markets oil, bitumen, and natural gas. *See generally* https://www.conocophillips.com/about-us/ (Last visited September 8, 2022).

23. CPC has numerous asset areas in the United States, in Alaska, and in the lower 48 states, including in Texas, Montana, Wyoming, Utah, New Mexico, Texas, Oklahoma, and Louisiana. *See generally* http://static.conocophillips.com/files/resources/smid-392-factsheet-lower48.html#1 (last visited September 8, 2022).

24. CPC has a practice of using staffing companies to source its workers such as Plaintiff.

25. To complete its business objectives, CPC hires personnel (like Plaintiff) to staff its far-flung worksites and further its production and business interests in said locations.

26. For example, Plaintiff was hired by CPC to provide services for CPC in Bee County, Texas; in DeWitt County, Texas; and in Live Oak County, Texas.

27. Plaintiff would service designated worksites and designated CPC equipment, and perform CPC-mandated inspections and safety checks.

28. Throughout Plaintiff's employment with CPC, CPC improperly classified him as an independent contractor exempt from overtime.

29. Throughout Plaintiff's employment with CPC, CPC paid him on a day rate basis, wherein Plaintiff received a day-rate for each day worked, regardless of how many hours he worked in a day or week.

30. During his time with CPC, Plaintiff regularly worked 12 or more hours each day, typically for stretches of two weeks at a time.

31. At no time during Plaintiff's employment with CPC did CPC pay him overtime compensation for hours worked in excess of forty (40) in a single week.

32. Plaintiff is one of many Wellsite Managers that CPC employed.

33. Numerous Wellsite Managers and those in similar roles whom CPC hired were classified by CPC as independent contractors and deemed ineligible for overtime compensation by CPC.

34. CPC paid many of these employees on a day rate basis (without overtime pay).

35. All such employees are subjected to the same or similar illegal pay practices for similar work.

36. These workers make up the proposed collective of Putative Class Members.

37. During the relevant period, these Putative Class Members were classified by CPC as independent contractors.

38. During the relevant period, these Putative Class Members worked for CPC on a day-rate basis.

39. During the relevant period, these Putative Class Members were not paid overtime for the hours they worked for CPC in excess of 40 hours each week.

40. While exact job titles and job duties may differ, CPC subjected the Putative Class Members and other wellsite workers to the same or similar illegal pay practices for similar work.

41. Plaintiff and the Putative Class Members worked in the field with other wellsite and oil and gas personnel.

42. The Putative Class Members performed the same general job duties performed by Plaintiff. That is work to assist in the furtherance of oil production.

43. The Putative Class Members worked the same or similar schedule worked by Plaintiff, regularly working more than 40 hours each week.

44. Frequently Plaintiff and the Putative Class Members worked for CPC well over 60 hours in a given week.

45. Plaintiff's work schedule is typical of the Putative Class Members.

46. CPC was in control of the work schedules of Plaintiff and the Putative Class Members.

47. Plaintiff and the Putative Class Members never received a salary for the work they performed for CPC.

48. Plaintiff and the Putative Class Members work(ed) for CPC under its day rate pay scheme.

49. Plaintiff and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

50. CPC classified Plaintiff and the Putative Class Members as independent contractors.

51. But CPC hired and treated Plaintiff and the Putative Class Members just like regular, even if sometimes short-term, employees.

52. In fact, Plaintiff and the Putative Class Members were employees of CPC.

53. The work assigned to and performed by Plaintiff and the Putative Class Members was governed entirely by CPC.

54. Plaintiff and the Putative Class Members reported directly to CPC management-level employees.

55. Plaintiff and the Putative Class Members had to follow CPC's policies and procedures.

56. Plaintiff and the Putative Class Members had to adhere to the quality standards put in place by CPC.

57. Plaintiff and the Putative Class Members were economically dependent on CPC and relied on CPC for work and compensation

58. CPC determined the amount and type of compensation paid to Plaintiff and the Putative Class Members.

59. Plaintiff and the Putative Class Members worked in accordance with schedules determined by CPC.

60. CPC controlled Plaintiff's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

61. CPC effectively prevented Plaintiff and the Putative Class Members (or outright prohibited them) from working other jobs for other companies while they were working on jobs for CPC.

62. CPC prohibited Plaintiff and the Putative Class Members from subcontracting out the work they are assigned by CPC.

63. While employed by CPC, Plaintiff and the Putative Class Members did not market their services elsewhere.

64. While employed by CPC, Plaintiff and the Putative Class Members worked exclusively for CPC.

65. Plaintiff and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, CPC provided Plaintiff and the Putative Class Members with the programs, equipment, and facilities necessary for them to perform the work required of them.

66. Plaintiff and the Putative Class Members did not personally provide the significant equipment and programs they worked with daily, such as the survey equipment, office space, computers, and other necessary equipment.

67. Plaintiff and the Putative Class Members do not incur operating expenses like rent, payroll, and marketing.

68. Rather, CPC made the large capital investments in buildings, machines, equipment, tools, and supplied the business in which Plaintiff and the Putative Class Members work.

69. The work Plaintiff and the Putative Class Members performed was an essential part of CPC's core businesses.

70. Without the job performed by Plaintiff and the Putative Class Members, CPC would not have been able to complete its business objectives.

71. At all relevant times, CPC maintained control, oversight, and direction of Plaintiff and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

72. CPC controlled Plaintiff's and the Putative Class Members' pay.

73. Likewise, CPC controlled Plaintiff's and the Putative Class Members' work.

74. Even though Plaintiff and the Putative Class Members may have worked away from CPC's offices without the constant presence of CPC's supervisors, CPC still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

75. The daily and weekly activities of Plaintiff and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by CPC.

76. Virtually every job function was predetermined by CPC, including the tools and equipment used, the schedule of work, and related work duties.

77. For example, to that end, CPC has published a 194-page "Lower 48 Handbook" (Handbook) in which CPC has compiled its policies and expectations for all CPC workers and contractors in the lower 48 states. S*ee* http://static.conocophillips.com/files/resources/hse-handbook.htm#116 (Last visited September 8, 2022).

78. Via this Handbook, CPC implements requirements and exerts control over its workers and nearly every imaginable aspect of their jobs, no matter how seemingly small, including but not limited to the following examples:

    a. The Handbook contains list of mandated instructions for climbing a ladder: CPC provides a bullet point list of thirteen requisite items that must be performed for an employee or contractor to climb a portable ladder in a manner that complies with CPC requirements. *See* **Exhibit B**.

    b. Via the Handbook, CPC provides a list as to what constitutes proper lifting technique: CPC has established fourteen separate requirements with which its workers are expected to comply in order to pick something up with their hands. *See* **Exhibit C**.

    c. For workers (including employees and contractors) who have less than six months of continuous experience in the oil and gas industry, CPC imposes a checklist

of trainings and assignments that must be completed for such a worker to stay or advance with CPC. Moreover, until the worker completes all the designated trainings and assignments, the worker is required to wear an identifier conveying his or her inexperience (they can choose between wearing a green hat or putting brightly colored tape on their hard hat) for a minimum of six months. *See* **Exhibit D**.

79. Overall, CPC prohibited Plaintiff and the Putative Class Members from varying their job duties outside of predetermined parameters.

80. Plaintiff and the Putative Class Members performed routine job duties largely dictated by CPC.

81. All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

82. All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

83. All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 60 hours in a workweek.

84. CPC uniformly denied Plaintiff and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

85. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

86. CPC violated the FLSA because CPC, via its broadly applied and illegal day rate pay plan, denied Plaintiff and the Putative Class Members of overtime pay for the hours they worked in excess of 40 in a single workweek.

87. CPC knew Plaintiff and the Putative Class Members worked more than 40 hours in a week.

88. CPC knew, or showed reckless disregard for whether, Plaintiff and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

89. CPC knew, or showed reckless disregard for whether, Plaintiff and the Putative Class Members were not exempt from the FLSA's overtime provisions.

90. CPC knew, or showed reckless disregard for, whether the Putative Class Members were entitled to overtime under the FLSA.

91. CPC utilized a day rate pay plan despite clear and controlling law that states that Plaintiff and the Putative Class Members were CPC's **_non-exempt_** employees, and not independent contractors.

92. The decision by CPC to utilize its day rate pay plan was and is a willful violation of the FLSA and was not undertaken in good faith.

93. Accordingly, CPC's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## COVERAGE UNDER THE FLSA

94. Plaintiffs incorporates all preceding paragraphs.

95. The FLSA Collective of similarly situated workers consists of:

> **All individuals in the Wellsite Manager position employed by or working on behalf of CPC and paid according to its day rate pay plan in the past three (3) years (Putative Class Members).**

96. At all times hereinafter mentioned, CPC was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

97. At all times hereinafter mentioned, CPC was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

98. At all relevant times, CPC has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

99. At all relevant times, CPC has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

100. In each of the past 3 years, CPC's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

101. During the respective periods of Plaintiff and the Putative Class Members' employment by CPC, the Putative Class Members provided services for CPC that involved interstate commerce for purposes of the FLSA.

102. CPC uniformly applied its policy of improperly classifying the Putative Class Members, including Plaintiff, as independent contractors.

103. CPC uniformly applied its policy of paying its Putative Class Members, including Plaintiff, a day rate with no overtime compensation.

104. CPC applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

105. CPC's practice of misclassifying its employees as independent contractors violates the FLSA.

106. CPC's uniform compensation scheme paying a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

107. By improperly classifying the Putative Class Members as independent contractors instead of employees, and by paying its workers a day rate with no overtime compensation, CPC violated (and continues to violate) the FLSA's requirement that it pay its employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

108. As a result of this policy, CPC and the Putative Class Members did not and do not receive overtime payment as required by the FLSA.

109. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in herein.

110. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of CPC.

### CAUSE OF ACTION
### FLSA VIOLATIONS

111. Plaintiff incorporates the preceding paragraphs by reference.

112. At all relevant times, Plaintiff and the Putative Class Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

113. CPC violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

114. In violating the FLSA, CPC knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

115. Because CPC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, CPC owes these wages for at least the past three years.

116. CPC knew or should have known its pay practices were in violation of the FLSA.

117. The decision and practice by CPC to not pay overtime was neither reasonable nor in good faith.

118. Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

119. All previous paragraphs are incorporated as though fully set forth herein.

120. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

121. Other similarly situated employees have been victimized by CPC's patterns, practices, and policies, which are in willful violation of the FLSA.

122. The parameters of the Putative Class Members are defined herein.

123. CPC's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

124. Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

125. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment.

126. All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

127. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

128. Indeed, the Putative Class Members are non-exempt employees entitled to overtime after forty (40) hours in a week.

129. CPC has employed a substantial number of similarly situated Wellsite Managers within the three-year period preceding the filing of the instant lawsuit.

130. Upon information and belief, these Putative Class Members are geographically dispersed, residing and working in locations across the United States.

131. Because the Putative Class Members do not necessarily have fixed work locations, they may work in different states across the country in the course of a given year.

132. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and CPC will retain the proceeds of its rampant violations.

133. Moreover, individual litigation would be unduly burdensome to the judicial system.

134. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

135. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 97 and notice should be promptly sent.

## JURY DEMAND

136. Plaintiff demands a trial by jury

## RELIEF SOUGHT

137. WHEREFORE, Plaintiff prays for judgment against CPC as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Putative Class as defined in herein and requiring CPC to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b. For an Order approving the form and content of a notice to be sent to all potential FLSA Putative Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order awarding Plaintiff (and those FLSA Putative Class Members who have joined in the suit) back wages that have been improperly withheld;

d. For an Order pursuant to Section 16(b) of the FLSA finding CPC liable for unpaid back wages due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Putative Class Members who have joined in the suit);

e. For an Order awarding the costs and expenses of this action;

f. For an Order awarding attorneys' fees;

g. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h. For an Order awarding the Plaintiff a service award as permitted by law;

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: September 12, 2022						Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    Fed Id. 27157
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    Fed Id. 1093163
    **Alyssa J. White**
    Texas Bar No. 24073014
    Fed Id. 1503719
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    awhite@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    Fed Id. 21615
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**